**Peggy TUCKER, Appellant,**

v.

**TERMINIX INTERNATIONAL CO., L.P., d/b/a "Buster Summy Pest Control", and Terminix International, Inc., Appellees.**

No. 13–97–206–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1998.

Rehearing Overruled Oct. 1, 1998.

William J. Chriss, Augustin Rivera, Jr., Rangel & Chriss, Corpus Christi, for Appellant.

William A. Gage, Jr., James Patrick Keenan, Buck Keenan & Owens, L.l.p., Houston, for Appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

YANEZ, Justice.

Peggy Tucker appeals a take-nothing judgment in favor of Terminix International Company (hereinafter "Terminix"). By six points of error, Tucker maintains that the court erred in instructing the jury on spoliation of evidence, admitting evidence of prior settlement negotiations, instructing the jury on mitigation of damages, and allowing improper jury argument, and she challenges the factual sufficiency of the evidence respecting particular findings. We reverse and remand.

In January 1994, as Tucker was placing her home on the real estate market, a Terminix technician came to her house to treat it for termite infestation. While drilling into the slab of the home to deposit pesticide, the Terminix technician apparently struck a water line, causing water to leak onto the floor of Tucker's home. The mess created by the investigation into the leak led Tucker to take her house off the market for a short period of time. A plumbing company eventually repaired the leak, and Terminix offered to remedy the damage the water had caused to the floor of the home. Tucker declined this offer and held her home out on the market in the condition it had been in. The house remained on the market for sixteen months before it sold.

Tucker then filed causes of action against Terminix for breach of contract and violations of the Texas Deceptive Trade Practices–Consumer Protection Act,[1] namely that Terminix failed to perform its warranty agreement, breached its implied warranty to perform services in a good and workmanlike manner, and, in failing to notify Tucker that the water line had been damaged, engaged in unconscionable conduct.

Tucker retained a testing center to gather soil samples from under her house and test them for pesticide residue. Counsel for Tucker sent a letter to the testing center to confirm the date for the collection of the soil samples and noted that because litigation was involved, the soil samples should be preserved in case of the need for future testing. The laboratory to which the soil samples had been sent, nevertheless, destroyed the soil samples, although the results of the testing had been reduced to writing and were produced in discovery.

At trial, Terminix requested and received a spoliation instruction to the jury. The instruction advised the jury that Tucker had destroyed evidence and that this act required that the jury presume the evidence would have been unfavorable to her case. The jury found in favor of Terminix, and the court entered a take-nothing judgment against Tucker.

■ By her first point of error, Tucker claims the trial court erred in granting the spoliation instruction. Tucker argues that the instruction was not supported by evidence, misstated the law, constituted an improper comment on the weight of the evidence, prejudiced the jury in favor of Terminix, was mere surplusage, and/or was not a necessary means for informing the jury of the law applicable to the case. Terminix contends it was disadvantaged by not having access to the soil samples. It further argues that Tucker's argument that the court's decision was not based on evidence is "form over substance." "When counsel approached the bench prior to [relevant expert] testimony all parties were in agreement as to the nature of the upcoming testimony, and there was no objection by Appellant's counsel to the timing of the instruction."

1. Tex. Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987 & Supp.1998).

■ Spoliation is defined as the destruction of evidence. *Brewer*, 862 S.W.2d at 158 n. 2 (citing BLACK'S LAW DICTIONARY 1257 (5th ed.1979). Failure to produce evidence within a party's control raises the presumption that if produced it would operate against that party, and every intendment will be in favor of the opposite party. *Id.* at 158. The presumption is effected in the form of a jury instruction. *See Ortega v. Trevino*, 938 S.W.2d 219, 221 (Tex.App.—Corpus Christi 1997), *rev'd on other grounds*, 969 S.W.2d 950 (1998); *Brewer*, 862 S.W.2d at 160.

■ A court has great discretion in submitting instructions to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974) (construing rule of civil procedure 277). A court, however, shall submit instructions "raised by the written pleadings and the evidence." TEX.R. CIV. P. 278. A spoliation instruction is no exception. The spoliation presumption against a non-producing party "comes into play only when one party has introduced evidence harmful to its opponent." *Brewer*, 862 S.W.2d at 159; *Watson v. Brazos Elec. Power Co-op., Inc.*, 918 S.W.2d 639, 644 (Tex.App.—Waco 1996, writ denied) ("Spoliation was raised by the pleadings and the evidence, and the jury should have had the benefit of an instruction to properly evaluate the facts according to the charge."). An instruction, moreover, "shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277.

Terminix first raised the spoliation issue at a motion in limine hearing prior to jury selection. Upon conclusion of argument, the court reserved ruling on the matter. During Tucker's case-in-chief, and just before a chemist with the testing center retained to test the soil samples was to testify, Terminix again raised the spoliation issue. The record reflects extended discussion between the court and counsel for both parties as to the propriety of a jury instruction on spoliation. Counsel for Tucker argued that he specifically requested the testing center, Gulf Coast Laboratory, to retain custody of the soil samples upon completion of their testing because litigation was involved and additional testing of the samples might be required. Not until deposition some months later was it learned that a laboratory to which Gulf Coast Testing Laboratory had sent the soil sample discarded the soil pursuant to federal and state environmental guidelines as to how long particular substances may be held and when tests must be conducted in order for results to be reliable. Counsel for Tucker noted that the test results had been reduced to paper and were produced in discovery, and that Terminix could have attempted to procure more soil samples for testing if they believed this was necessary. Counsel for Terminix argued they were victims of a "gotcha," in that Tucker made no effort to advise Terminix that the soil had been tested, "the test results [2] are destroyed six months later," and then the lawsuit is filed. Counsel for Tucker argued that Terminix never requested the soil samples in discovery.

In response to this argument, the court stated that "[n]obody did anything wrong," but that Terminix suffered a harm by destruction of the samples, and the court intended to balance equities by both granting the spoliation instruction and allowing the expert testimony as to the test results. The court thereby announced that it granted an instruction to the jury which would state that Tucker suppressed evidence and that, as a result, the suppressed evidence should be presumed to have been unfavorable to her cause of action. The court asked counsel for Terminix when he would like the instruction announced to the jury.

■ The record thus reflects that the court made its ruling on the basis of argument, not evidence. That the court improperly made its ruling on the basis of argument rather than evidence, however, was not objected to at trial. Indeed, it is evident from the proceedings that while counsel for Tucker disagreed with the spoliation instruction, he had no objection to the court ruling solely on the basis of representations by counsel as to what the evidence would show. Indeed, they effectively stipulated to most facts relevant to the issue. Hence, we hold that the

---

**2.** This is the exact language of the argument, but it is apparent from the record that the test results were not destroyed, only the soil samples on which the test results were based were destroyed.

complaint that the court ruled on the instruction without a proper evidentiary basis is without merit and was waived.

■ The record, nevertheless, reflects no basis in law for the court's instruction. It is undisputed that Tucker did not intentionally cause the soil samples to be destroyed. We find no basis in the record for holding that Tucker should be held responsible for the destruction of the evidence by the testing laboratory. As the court recognized, "[n]obody did anything wrong." We find no basis in law for a spoliation instruction where it is agreed that the non-producing party did not destroy prospective evidence and, in fact, made an effort to prevent destruction of the prospective evidence. We hold that the court abused its discretion in granting the spoliation instruction.

■ Even so, we may not reverse a judgment of the trial court unless we determine that the error probably resulted in the rendition of an improper judgment. TEX.R.APP. P. 44.1(1). In the instant case, the court, in its charge, first instructed the jury as follows:

> Terminix is entitled to show that the opposing party has destroyed soil samples that could bear on a crucial issue in this case. Because the destruction of evidence raises a presumption that the evidence would have been unfavorable to Ms. Tucker, I instruct you that it is presumed that had Terminix been allowed access to the soil samples before they were destroyed, then the ultimate test results would have been unfavorable to Ms. Tucker and favorable to Terminix. Further, the court instructs you that the plaintiff's test results are presumed to be unreliable.

The first question the jury was asked in the charge was: "Did Terminix engage in any of the following acts or practices that were a producing cause of damages to Peggy Tucker?" And after defining "producing cause," the jury was given the following acts to answer "yes" or "no": "A. Failing to perform the Termite Protection Agreement between Terminix and Peggy Tucker," and "B. Failing to perform their services in a good and workmanlike manner."

■ It is an undisputed matter of record, we reiterate, that Tucker did not have the soil samples destroyed. The court, nevertheless, instructed the jury to assume otherwise and mischaracterize the facts of the case. The chemist with Gulf Coast Testing testified that the results of the soil sampling indicated that a pesticide chemical was present in some of the soil. Terminix presented some expert testimony that "you cannot do anything with one sample" and that the sampling methods used by Tucker's experts were "not consistent with what the pest control regulatory officials have adopted as the proper method of sampling." Absent the instruction, the jury thus would have had a conflict in evidence to resolve. Court's instructions, however, "become the law of the case and are to be accepted by the jury as the guide on which they must rely." *Watson,* 918 S.W.2d at 643 (quoting *Charter Oak Fire Ins. Co. v. Taylor,* 658 S.W.2d 227, 230 (Tex.App.— Houston [1st Dist.] 1983, no writ)). In this case, the jury was instructed to disbelieve Tucker's expert, presume the opposite was true, and had Terminix's expert testimony to help them rationalize the presumption that the court directed them to make. We cannot say the erroneous instruction was harmless. Point of error one is sustained.

By our disposition of this point of error, we need not reach Tucker's remaining points of error, which raise factual sufficiency of the evidence and improper jury argument complaints. TEX.R.APP. P. 47.1.

Accordingly, we REVERSE the judgment of the trial court and REMAND this cause for a new trial.