**Urban v. Dollar Bank**

12

C.P. of Allegheny County, nos. GD94-8935 & GD95-2892.

*Louis B. Loughren,* for plaintiff Urban.
*Dennis St. J. Mulvihill,* for defendant Dollar Bank.
*Elizabeth A. Beroes,* for plaintiff Hough.
*Philip M.P. Buttenfield,* for defendant Knickerbocker Russell Co.
*Joseph Bosick,* for defendant Gound Hog Inc.

WETTICK, *J.,* October 23, 1996—In these lawsuits, plaintiffs have filed motions to amend their complaints to raise spoliation of evidence as a separate cause of action. Defendants oppose the motions on the ground

that in Pennsylvania there is no cause of action for spoliation of evidence.[1]

In *Urban v. Dollar Bank,* plaintiff initially filed a six-count complaint seeking recovery for malicious abuse of process, intentional infliction of emotional distress, defamation, conspiracy, and negligent infliction of emotional distress. Plaintiff alleges that she was the head teller at a branch of Dollar Bank. The branch manager conspired with other employees to influence the upper management of Dollar Bank to wrongfully terminate the employment of plaintiff. Pursuant to this conspiracy, an employee of the bank wrongfully and without probable cause executed a false application for involuntary emergency examination and treatment under the Pennsylvania Mental Health Procedures Act. This application described an alleged conversation that occurred on February 7, 1994 (Monday) between plaintiff and the employee in which plaintiff named bank employees whom she did not like and stated that she would have no problem bringing a gun into the bank and killing someone. According to plaintiff's complaint, such a conversation never took place.

As a result of the filing of the application, during the afternoon of February 11, 1994 (Friday), plaintiff was taken into custody by the police at her home, involuntarily transported to St. Clair Memorial Hospital, and detained for more than three hours at which time she was released based on a finding that she was not suffering from any severe mental disability.

---

1. A court should deny a motion to amend if the proposed amendment does not contain factual allegations that set forth a valid cause of action. *Stephenson v. Greenberg,* 421 Pa. Super. 1, 617 A.2d 364 (1992).

Plaintiff seeks to add two counts to her complaint—intentional and negligent spoliation of evidence. The intentional spoliation of evidence count is based on the following allegations: From February 7, 1994 to the early afternoon of February 11, 1994, plaintiff continued to work at the branch bank. The branch bank had a surveillance system which videotaped the interior of the branch bank. These videotapes would have shown that plaintiff was acting in a manner consistent with a normal, healthy, sane, hardworking, and loyal bank employee; that she was socializing and being friendly with her fellow employees; that the branch manager in a friendly manner advised plaintiff that she could leave work early on February 11 because plaintiff was going on vacation; and that after February 7, 1994 the bank employees did not behave in a way which suggested that they were in fear for their lives due to plaintiff's mental instability. This surveillance system would also have videotaped conversations between the police and bank employees that occurred at the bank after plaintiff had left work on February 11. Defendant viewed the videotapes for the period between February 7, 1994 and February 11, 1994. After this lawsuit was instituted, defendant intentionally erased the videotapes by causing the videotapes depicting this information to be reused with the knowledge that the tapes contained information relevant to the present litigation. The destruction of this evidence has severely interfered with plaintiff's ability to prove that the bank employee lacked probable cause in instituting mental health proceedings against plaintiff.

Plaintiff's negligent spoliation of evidence count avers that if the reuse of the tapes was not intentional,

defendant was negligent and careless in not preserving the evidence contained on the videotapes.

In *Hough v. Knickerbocker Russell Company and Ground Hog Incorporated,* plaintiff was seriously injured during the course of his employment while operating an earth auger. Plaintiff alleges that Ground Hog designed, manufactured, and sold the auger and that Knickerbocker Russell Company supplied the auger to plaintiff's employer. Plaintiff has brought 402A, breach of warranty, and negligence claims against Knickerbocker and Ground Hog. The allegations include failure to warn, the sale of a dangerously defective product, the failure to include a "kill" switch, the failure to design a throttle to automatically return to an idling speed, the failure to include an on/off switch at an accessible location, and the failure to utilize a safety clutch that would have protected plaintiff.

In his proposed amended complaint, plaintiff seeks to include a claim for spoliation of evidence against Knickerbocker based on allegations that there was an agreement between counsel for plaintiff and counsel for Knickerbocker that the auger would be made available to plaintiff's expert for further testing, that when plaintiff's expert asked to re-examine the auger, Knickerbocker advised plaintiff's counsel that it had been lost or sold, that Knickerbocker was eventually able to recover the auger but that it had been badly damaged, that plaintiff incurred expenses in order to prepare the auger for further testing and use at trial, and that the damage to the auger has made plaintiff's presentation of evidence more difficult.

A tort of intentional spoliation of evidence was first recognized in *Smith v. Superior Court for County of Los Angeles,* 198 Cal. Rptr. 829 (Cal.Ct.App. 1984). In that case, Smith, while driving southbound, was se-

riously injured when a wheel flew off of a van of a northbound vehicle, crashing into the windshield of Smith's vehicle. Immediately after the accident, the van was towed for repairs to the automobile dealer that had customized and sold the van. The dealer agreed with Smith's counsel to maintain certain automobile parts, pending further investigation. Thereafter, the dealer destroyed, lost, or transferred the physical evidence, making it impossible for Smith's expert to inspect and test those parts in order to pinpoint. the cause of the failure of the wheel assembly on the van.

Smith brought a product liability claim against the parties whom she believed to be responsible for the personal injuries that she sustained from the accident. She also sued the dealer for intentionally interfering with her opportunity to win her lawsuit.

The lower court sustained the dealer's demurrer to the cause of action for intentional spoliation of evidence. The court of appeals reversed.

The court of appeals stated that the tort of spoliation of evidence had never been recognized; however, it cited the principle that "California has long recognized '[f]or every wrong there is a remedy' and has allowed for new torts through the legislative and judicial process." *Id.* at 832. (citations omitted) The court concluded that a prospective civil action in product liability is a valuable probable expectancy that the courts must protect from the kind of interference alleged in plaintiff's complaint. Consequently, the court held that Smith was entitled to legal protection against the dealer's alleged intentional spoliation of evidence, even though her damages could not be stated with certainty, and directed that this cause of action be heard at the same time as the cause of action for personal injuries.[2]

---

2. The *Smith* opinion analogized the spoliation claim to the tort of intentional interference with business expectations, the elements

Even if a separate tort of spoliation of evidence should be recognized in the fact situation of the *Smith* case, *Smith* is readily distinguishable from most other situations in which a party seeks to raise a cause of action for spoliation of evidence. *Smith* was not creating a duty to preserve evidence; *Smith* involved the breach of a promise to preserve evidence. In *Smith,* recovery was not based on a negligence theory; *Smith* involved the intentional destruction or loss of evidence.

Also, while *Smith* said that it recognized the difficulty of establishing damages with a reasonable certainty, it did not address specific damage issues. If spoliation of evidence is to be recognized, will this cause of action be considered by a jury only if the plaintiff does not recover in the underlying personal injury action or will the plaintiff be permitted to pursue a spoliation claim on the ground that the plaintiff would have recovered a greater amount if the missing evidence had been available? If the plaintiff recovers damages in the personal injury case based on a finding that the defendant is 100 percent liable, may the plaintiff pursue a spoliation claim to recover punitive damages? If the plaintiff does not prevail in the personal injury case, in the spoliation cause of action, will the jury be instructed that it may award damages only if it believes that the plaintiff would have prevailed but for the missing evidence or will

of which include, according to the court's opinion, a defendant's interference with an economic relationship between the plaintiff and some third party. This rationale would support a spoliation claim against a third party that was not accused of causing the plaintiff's personal injuries. However, it would not justify a separate intentional interference claim against a defendant whose conduct allegedly caused the plaintiff's injuries because in this situation the defendant has not interfered with an economic relationship between the plaintiff and a third party.

the jury be instructed to award the full amount of the damages that the plaintiff sustained from the personal injuries if the jury believes that the missing evidence was a substantial factor in the verdict in favor of the defendant in the underlying personal injury claim? Or, alternatively, will the jury be instructed that it should place a monetary value on the increased likelihood that the plaintiff would have recovered if the evidence had been available?

The *Smith* opinion did not go unnoticed. Since 1984, numerous other jurisdictions have been asked to recognize a tort of spoliation of evidence, the contours of which have been described as sufficiently flexible so as to include whatever fact situation might be involved in the case before the court being asked to recognize this new tort.

Florida and Alaska were the first two jurisdictions that followed the *Smith* decision in recognizing a tort of spoliation of evidence. In *Bondu v. Gurvich,* 473 So.2d 1307 (Fla. Dist. Ct.App. 1984), in an underlying medical malpractice action, the court entered summary judgment in favor of the defendants because the plaintiff could not offer expert testimony to establish medical malpractice. Thereafter, the plaintiff proceeded against the hospital on the ground that the hospital negligently lost medical records that had to be reviewed before the plaintiff could obtain favorable expert testimony in the underlying medical malpractice lawsuit. The Florida Court of Appeals found that under administrative regulations promulgated by the State Health and Rehabilitation Services, the hospital had a duty to maintain the medical records that it had lost. Consequently, it held that the plaintiff could pursue a cause of action

for negligent failure to preserve evidence for civil litigation and for intentional interference with a prospective civil action by spoliation of evidence.

In *Hazen v. Municipality of Anchorage,* 718 P.2d 456 (Alaska 1986), the plaintiff contended that she was falsely arrested for solicitation; she alleged that she had told the undercover police officer that she operated a legitimate massage parlor and that if he wanted sex he should go home and sleep with his wife or go down the block. The undercover police officer had taped his conversation with the plaintiff with a hidden recorder. This tape would, according to the plaintiff, show that she was telling the truth and that the police officer was lying.

Following dismissal of the criminal proceedings, the plaintiff filed suit against four arresting officers and the municipality of Anchorage seeking recovery for false arrest, malicious prosecution, libel, and violation of civil rights. During discovery, the plaintiff's attorney obtained the arrest tape, but it was not audible. The plaintiff sought to add a new cause of action based on the intentional alteration of the arrest tape. The lower court fashioned an implied cause of action under the Alaska Constitution for deliberate violations of due process. The Alaska Supreme Court said that it would not decide whether a cause of action should be implied under the Alaska Constitution based on these allegations; the court said that although the issue was neither briefed nor discussed at oral argument, it concluded that there was a common-law cause of action in tort for intentional interference with prospective civil action by spoliation of evidence.

While the *Bondu* and *Hazen* cases followed and expanded the *Smith* decision, in general, the tort of spoliation of evidence has not been widely adopted. Many

jurisdictions have either found that there is no need for the recognition of a new cause of action in tort for spoliation of evidence or have concluded that even if the jurisdiction might in some circumstances recognize this tort, it would not fall within the fact situation before the court. Furthermore, there is little agreement on the contours and limitations of the tort of spoliation of evidence in those jurisdictions that found that such a tort exists.

A recent opinion of the California Court of Appeals, Fifth District, in *Willard v. Caterpillar Inc.,* 48 Cal. Rptr. 2d 607, 617-18 (Cal.Ct.App. 1995), summarizes the case law of the various jurisdictions that have addressed the issue of whether a spoliation tort should be recognized:

"(b) *Other jurisdictions*

"In addition to California, Alaska, Florida, Illinois, and Kansas have recognized a civil action for spoliation of evidence. (*Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463-64 (Alaska 1986); *Bondu v. Gurvich,* 473 So.2d 1307, 1312 (Fla.App. 1984); *Rodgers v. St. Mary's Hosp. of Decatur,* 149 Ill.2d 302, 173 Ill.Dec. 642, 646, 597 N.E.2d 616, 620 (1992); *Foster v. Lawrence Memorial Hosp.,* 809 F. Supp. 831, 838 (D.Kan. 1992).) Ohio and New Jersey recognize a tort of fraudulent destruction of evidence analogous to intentional spoliation of evidence. (*Smith v. Howard Johnson Co. Inc.,* 67 Ohio (1993); *General Motors Corp.,* 266 N.J. Super. 222, 628 A.2d 1108, 1115 (1993); *Viviano v. CBS Inc.,* 251 N.J. Super. 113, 597 A.2d 543, 548-49 (1991).) North Carolina recognizes a cause of action for plaintiff's increased costs of investigation stemming from defendants' alteration of medical records. (*Henry v. Deen,* 310 N.C. 75, 310 S.E.2d 326, 334-35(1984).)

"Several courts have refused to recognize the spoliation tort for policy reasons. (*Gardner v. Blackston* 185 Ga.App. 754, 365 S.E.2d 545, 546 (1988); *Weigl v. Quincy Specialties Co.,* 158 Misc.2d 753, 601 N.Y.S.2d 774, 776 (1993); *Baugher v. Gates Rubber Co. Inc.,* 863 S.W.2d 905, 909, 911-12 (Mo.App. 1993).) Others declined to adopt the tort on the ground traditional remedies for the destruction of evidence were sufficient to protect spoliation victims and to deter future wrongdoers. *(Miller v. Montgomery County,* 64 Md.App. 202, 494 A.2d 761, 768 (1985); *Wilder-Mann v. United States* (Nos. 87-2312 and 90-2136, D.D.C. June 28, 1993) [nonpub. opn.].)

"Finally, other courts have addressed, but not adopted, the spoliation tort for various reasons particular to the case before them. (*La Raia v. Superior Court etc.,* 150 Ariz. 118, 722 P.2d 286, 289 (1986) [availability of alternative remedies]; *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.,* 982 F.2d 363, 371 (9th Cir. 1992) [facts of case did not indicate injury to defendant from plaintiff's spoliation]; *Federated Mut. v. Litchfield Prec. Comp.,* 456 N.W.2d 434, 439 (Minn. 1990) [cause of action for spoliation was 'premature' because damage to insurer's subrogation claim was speculative]; accord, *Kent v. Costruzione Aeronautiche Giovanni Agusta, S.p.A.,* (No. 90-2233, E.D. Pa. Sept. 20, 1990) [nonpub. opn.] [action premature]; *Murray v. Farmers Ins. Co.,* 118 Idaho 224, 796 P.2d 101, 107 (1990) [no causation]; *Murphy v. Target Products,* 580 N.E.2d 687, 688-89 (Ind.Ct.App. 1991) [employer has no duty to preserve *potential* evidence for employee's possible third-party action]; accord, *Panich v. Iron Wood Products Corp.,* 179 Mich. App. 136, 445 N.W.2d 795, 797 (1989); *Diehl v. Rocky Mountain Communications,* 818 S.W.2d 183, 184 (Tex.Ct. App. 1991); *Edwards v. Louisville*

*Ladder Co.,* 796 F. Supp. 966 (W.D. La. 1992); *Wilson v. Beloit Corp.,* 921 F.2d 765 (8th Cir. 1990) [absent special relationship or duty arising by reason of contract, statute or other special circumstance, no obligation to preserve possible evidence for another party to aid that party in future litigation against another]; and see Annot., Intentional Spoliation of Evidence, Interfering With Prospective Civil Action, As Actionable, 70 A.L.R.4th 984 (1989).)"

Subsequent case law in the three jurisdictions that initially recognized a civil action for spoliation of evidence has narrowed this cause of action. In *Willard v. Caterpillar Inc., supra,* the California Court of Appeals reversed a jury verdict in the plaintiff's favor where the trial court had permitted recovery upon a finding of (1) pending or probable civil litigation, (2) the defendant's knowledge that the litigation is pending or probable, (3) willful destruction of evidence, (4) intent to interfere with the plaintiff's prospective civil suit, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages. The court of appeals ruled that a claim for intentional spoliation of evidence should not be submitted to a jury without an initial judicial determination that balances various policies and interests on a case-by-case basis taking into account (1) the nature and seriousness of the harm to the injured party, (2) the interest promoted by the actor's conduct, (3) the character of the means used by the actor, and (4) the actor's motive. Also see, *Reid v. State Farm Mutual Insurance,* 218 Cal. Rptr. 913 (Cal.Ct.App. 1985), where the court held that an insurance company had no duty to its insured to preserve a wrecked vehicle as evidence absent a specific request from the insured to do so.

In *Sweet v. Sisters of Providence in Washington,* 881 P.2d 304 (Alaska 1994), the Alaska Supreme Court concluded that the appropriate relief for a hospital's inability to locate certain medical records was a jury instruction placing the burden on the hospital to affirmatively disprove medical negligence and causation. The court concluded that while the *Smith* rationale could support recognition of the tort of negligent destruction of records, the remedy of burden shifting was a sufficient response to the loss or destruction of the records.

In *Miller v. Allstate Insurance Co.,* 650 So.2d 671 (Fla. Dist. Ct.App. 1995), the Florida Court of Appeals reversed a judgment against an insurance company that had breached a promise to the plaintiff to return the wrecked car because of the plaintiff's failure to pursue the underlying product liability claim. In response to the plaintiff's argument that it would have been frivolous to proceed against the manufacturer because of the expert's inability to offer an opinion on the issue of product defect, the court said that the plaintiff was ignoring the product defect inference which is available to certain product liability claimants.

In *Continental Insurance Co. v. Herman,* 576 So.2d 313 (Fla. Dist. Ct.App. 1990), the Florida Court of Appeals set aside a jury verdict for the plaintiff in a suit for negligent destruction of evidence. In that case, the plaintiff was seriously injured when the car which she was operating was struck by an uninsured motorist.

Continental was the plaintiff's insurance company. Continental had control of the plaintiff's damaged automobile. It promised the plaintiff's counsel that it would be preserved for counsel's inspection; by mistake, it was destroyed.

In prior litigation, the plaintiff made a claim against Continental under her uninsured motorist coverage policy. Continental defended on the ground that the plaintiff's negligence was the cause of the accident. This uninsured motorist claim was tried in arbitration. The arbitrators found that the plaintiff's total damages were $4.3 million and that the plaintiff was 80 percent comparatively negligent. Consequently, they awarded $860,000 to the plaintiff.

The plaintiff then brought this lawsuit for negligent destruction of evidence contending that Continental's negligent failure to preserve the evidence prevented the plaintiff from offering a stronger case in the arbitration proceeding. The jury determined that the negligent failure to preserve the vehicle was a legal cause of loss to the plaintiff and that the plaintiff was only 65 percent negligent in causing the collision. Consequently, the plaintiff was awarded an additional $645,000 above the $860,000 arbitration award. This verdict was set aside. The Florida Court of Appeals held that the plaintiff had no cause of action for destruction of evidence because as a matter of law the plaintiff had not suffered a significant impairment of the ability to prove the underlying lawsuit.

Courts that have declined to follow *Smith*, generally accept the opinion's premise that courts may create new torts under appropriate circumstances. Their disagreement is with the premise that there is a need for this tort. They believe that there are other remedies for the destruction of evidence that are more effective, more efficient, and fairer.

In *Miller v. Montgomery County*, 494 A.2d 761 (Md.Ct. Spec. App. 1985), the plaintiff was injured in an automobile accident caused by a malfunctioning traffic signal. Montgomery County had responsibility

for maintaining the traffic signal. The plaintiff's complaint included a separate cause of action against the county based on spoliation of evidence. The court ruled that there is no separate cause of action against a party to the underlying personal injury action because there is no basis or need for one:

"The destruction or alteration of evidence by a party gives rise to inferences or presumptions unfavorable to the spoliator, the nature of the inference being dependent upon the intent or motivation of the party . . . .

"In either event, the remedy for the alleged spoliation would be appropriate jury instructions as to permissible inferences, not a separate collateral action. The court did not err in sustaining the demurrer to the second count of appellant's amended declaration." *Id.* at 768.

In *Boyd v. Travelers Insurance Co.,* 652 N.E.2d 267 (Ill. 1995), the plaintiff was seriously injured by an explosion allegedly caused by propane gas escaping from a Coleman heater. The plaintiff filed a claim for workers' compensation benefits. Travelers, the workers' compensation insurer of the plaintiff's employer, took possession of the Coleman heater, telling the plaintiff that it needed the heater in order to investigate the claim. Its representatives told the plaintiff that Travelers would inspect and test the heater to determine the cause of the explosion.

When the plaintiff asked that the heater be returned to him in order to institute legal proceedings against Coleman, Travelers was unable to locate it.

The plaintiff filed a five-count complaint against Travelers and Coleman. The claims against Travelers included causes of action for negligent spoliation of evidence and for willful and wanton spoliation of evidence. The Illinois Supreme Court ruled that the plaintiff could proceed against Travelers because its claims for neg-

ligent spoliation could be stated under existing negligence law without creating a new tort. The court said that while, as a general rule, there is no duty to preserve evidence, a duty may arise under existing negligence law through an agreement, a contract, a statute, or other special circumstances under which a party voluntarily assumed the duty by affirmative conduct. There is causation if the loss or destruction of the evidence which the defendant was obligated to preserve caused the plaintiff to be unable to prove the otherwise valid underlying cause of action.

Also see, *Sweet v. Sisters of Providence in Washington, supra,* where the court concluded that the remedy of burden shifting is a sufficient response to the loss or destruction of records.

No Pennsylvania appellate court has addressed the issue of whether Pennsylvania will recognize spoliation of evidence as a separate cause of action.

In *Olson v. Grutza,* 428 Pa. Super. 378, 631 A.2d 191 (1993), the injured parties sued a lessor of equipment who joined the manufacturer. The manufacturer joined two other parties on the ground that they had destroyed relevant evidence, thereby seriously prejudicing the ability of the manufacturer to defend. The issue that the Superior Court decided was whether the manufacturer's spoliation claims were related to the claim which the plaintiff had asserted against the original defendant. The court said that joinder was not permitted under Pa.R.C.P. 2252 because the evidence needed to establish a cause of action for destruction/spoliation of evidence is different from the evidence needed to establish negligence for the plaintiff's injuries. Because it found that the spoliation claim did not satisfy the joinder conditions of Rule 2252, the court said that it would not

decide whether spoliation of evidence is a viable cause of action in Pennsylvania.

I am aware of five common pleas court opinions that have decided whether spoliation may be raised as a separate cause of action.[3]

In *Lichty v. Kucharczuk,* 5 D.&C.4th 120 (North-ampton 1989), Judge Freedberg ruled that there is no cause of action for spoliation where the alleged spoliation is known prior to the trial of the principal case and the alleged spoliator is a party to that case. The court stated that the spoliation can be effectively employed at trial to undermine the credibility of the defendants; there is no need for a separate cause of action for spoliation.

In *Johnson v. Patel,* 19 D.&C.4th 305, 309-310 (Lackawanna 1993), the plaintiffs' complaint included a separate count based on allegations that the defendants had intentionally altered the plaintiffs' medical records. Judge Cottone, citing *Lichty,* ruled that the plaintiffs could not maintain a separate cause of action for spoliation or fraud based upon spoliation.

In *Liebig v. Consolidated Rail Corp.,* 31 Lebanon Co. Leg. J. 188 (1994), the defendant had destroyed evidence that would have established the speed of the

---

3. Also, spoliation was discussed in *Pacelli v. American High Reach Inc.,* 144 P.L.J. 463 (1996), where the plaintiff's requests for a motion in limine to bar certain evidence and for a point for charge on an adverse inference based on spoliation of evidence were denied. Judge Strassburger of this court stated that there is no precedent in Pennsylvania for the plaintiff's motion in limine or requested point for charge because no case has ever applied the concept of spoliation of evidence to a defendant. His opinion further stated that even if the concept of spoliation of evidence would apply when a defendant fails to preserve evidence, the facts of the case did not warrant precluding the defendants from presenting their evidence.

defendant's locomotive in a claim that included negligence allegations based on the locomotive's operating at a speed too fast for existing conditions and a failure to reduce speed. Judge Walter ruled that a separate cause of action for spoliation of evidence should be permitted in Pennsylvania; he concluded that jury instructions regarding inferences of liability are insufficient because these inferences would be futile if a case fails to reach the finder of fact because of summary judgment or a nonsuit. He said that any claim for negligent spoliation is an alternative to the party's substantive claims, that a party is not entitled to recover damages on both the substantive claim and the spoliation claim and that a party may seek recovery for spoliation of evidence only if its substantive claim fails because of lack of evidence due to the spoliation of evidence directly related to the substantive claim.

In *Taylor v. Johnson Products Co. Inc.,* 115 Dauphin Co. Rep. 398 (1995), Judge Turgeon followed *Liebig v. Consolidated Rail Corp.* She also stated that spoliation of evidence is an alternative action available only where the plaintiff does not succeed on the substantive claims because of the lack of evidence due to its spoliation.

In *Rhoads v. Pottsville Hospital,* 31 D.&C.4th 500 (1996), Judge Baldwin entered an opinion in which he rejected the *Liebig* and *Taylor* opinions because:

"In each case if it were determined that the defendant's actions have made it impossible for the plaintiffs to prove the facts necessary to support their cause of action, as a sanction those facts could be presumed to have been established for purposes of pretrial motions and the jury directed to infer their existence at the time of trial. Then in the context of the issues present and related to the underlying action, the jury could determine whether the plaintiffs have met their burden

of proof with the benefit of the judicially directed inferences and what, if any, damages the plaintiffs incurred as a result of the defendants' actions, assuming those facts to have been established. Instead it is suggested that the plaintiff proceed to trial with the available evidence and, if successful, then have the jury consider the spoliation of evidence claim and attempt to determine whether the destruction of evidence caused a significant impairment in the ability of the plaintiff to win the lawsuit, after which the jury must then calculate some form of damages. In the absence of any remedial adverse inference because of the lost evidence, the jury would have to speculate what the lost evidence would have shown and to what degree it would have contributed to the plaintiff's success in the underlying suit. The use of remedial inferences has the dual benefit of obviating the need for speculation and maximizing judicial economy by avoiding consideration of a parallel cause of action." *Id.* at 13.

I agree with Judge Baldwin that the use of remedial adverse inferences rather than the recognition of a new tort is the more appropriate approach for addressing a spoliation of evidence claim against a defendant.[4] As the California Court of Appeals recognized in *Willard v. Caterpillar,* 48 Cal. Rptr. 2d at 616, "[s]poliation occurs along a continuum of fault—ranging from innocent through the degrees of negligence to intentional conduct. . . . [T]here are competing policy issues entangled in the question of how far the spoliation tort should extend," *id.* at 626, and there is a need for

---

4. Judge Baldwin's opinion allows remedial inferences to be imposed prior to trial. This addresses the concern that inferences would be futile if a case fails to reach the trier of fact because of summary judgment or nonsuit.

the courts to "balance the various policies and interests on a case-by-case basis." *Id.* at 627.

The tort of spoliation of evidence offers an all or nothing approach. It does not provide a remedy that is based on a weighing of each of the factors and interests that should be considered in determining the nature of any relief that should be provided to a plaintiff when a defendant has lost or destroyed evidence that might have assisted the plaintiff in presenting its claim.

An opinion of the United States Court of Appeals for the Third Circuit in *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir. 1994), discusses the manner in which a court should exercise its inherent powers to sanction parties for destruction of evidence on a case-by-case approach that gives consideration to the degree of fault on the part of the party accused of spoliation and the degree of prejudice to the opponent.[5] *Schmid* involved a situation in which the plaintiff's expert had altered an allegedly defective product during the course of his examination, thereby denying the defendant the opportunity to examine the product to determine its condition at the time of the accident. The court said that the critical considerations in determining the manner in which a court shall exercise its inherent authority to determine what sanction, if any, is appropriate are "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid

---

5. The court's opinion recognized that the propriety of spoliation inferences are well-established in most jurisdictions including Pennsylvania. In fact, since the early seventeenth century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. *Id.* at 78.

substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id.* at 79.

Spoliation of evidence has always been a problem. Courts have effectively addressed this problem through the exercise of their inherent powers to exclude evidence and to create inferences.[6] In *McHugh v. McHugh,* 186 Pa. 197, 40 A. 410 (1898), the Pennsylvania Supreme Court referred to the principle that spoliation of papers and the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to this party as a principle "now so well established that it is unnecessary to do more than state it." *Id.* at 201. With the additional sanctions that may be imposed under the Rules of Civil Procedure governing discovery, courts are in an even better position to provide appropriate relief for violations of obligations to preserve or produce evidence. Furthermore, where persons who are not responsible for the incident violate obligations that the law recognizes to preserve evidence, there are remedies under existing tort and contract law that appear to be adequate.

Pennsylvania courts do not create new torts where existing law provides adequate remedies to address the claims raised by a party requesting the recognition of a new tort. *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Co.,* 385 Pa. Super. 30, 37, 560 A.2d 151, 154-55 (1989); *DeAngelo v. Fortney,* 357 Pa. Super. 127, 132, 515 A.2d 594, 596 (1986);

---

6. See *e.g.,* the line of cases (*DeWeese v. Anchor Hocking,* 427 Pa. Super. 47, 628 A.2d 421 (1993); *Roselli v. General Electric Co.,* 410 Pa. Super. 223, 599 A.2d 685 (1991); *Santarelli v. BP America,* 913 F. Supp. 324 (M.D. Pa. 1986)) addressing the plaintiff's inability to produce evidence.

*Standard Pipeline Coating Co. Inc. v. Solomon & Teslovich Inc.,* 344 Pa. Super. 367, 374, 496 A.2d 840, 843-44 (1985). In the present lawsuits, the remedies that are already available—the imposition of appropriate irrebuttable and rebuttable inferences and the sanction provisions of the Rules of Civil Procedure governing discovery—will provide adequate relief. For these reasons, I enter the following orders of court:

## ORDER
### No. GD94-8935

On October 23, 1996, it is hereby ordered that plaintiff's motion to amend her complaint is denied.

## ORDER
### No. GD95-2892

On October 23, 1996, it is hereby ordered that plaintiff's motion to amend his complaint is denied.